FILED
11-30-2023
CLERK OF CIRCUIT
COURT
MARATHON COUNTY
2023CV000707
Honorable Gregory J.
Strasser
Branch 4

## STATE OF WISCONSIN
## CIRCUIT COURT
## MARATHON COUNTY

|  |  |
|---|---|
| CITY OF WAUSAU, | ) ) ) |
| *Plaintiff,* | ) ) ) |
| -*vs* - | ) ) **Case No:** ) |
| AGC CHEMICALS AMERICAS, INC.; AMEREX CORPORATION; ARKEMA INC.; ARCHROMA U.S., INC.; BASF CORPORATION, individually and as successor in interest to Ciba Inc.; BUCKEYE FIRE EQUIPMENT COMPANY; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD INC.; CHEMICALS, INC.; CLARIANT CORPORATION, individually and as successor in interest to Sandoz Chemical Corporation; DEEPWATER CHEMICALS, INC.; DYNAX CORPORATION; NATION FORD CHEMICAL COMPANY; TYCO FIRE PRODUCTS, LP, individually and as successor in interest to The Ansul Company; ACE AMERICAN INSURANCE COMPANY; ACE PROPERTY AND CASUALTY INSURANCE COMPANY; AETNA CASUALTY AND SURETY COMPANY; AFFILIATED FM INSURANCE COMPANY; AGRICULTURAL INS. CO. d/b/a American Agricultural Insurance Company; AIG SPECIALTY INSURANCE COMPANY f/k/a Chartis Specialty Insurance Company; AIG SPECIALTY INSURANCE GROUP f/k/a Chartis Select Insurance Company f/k/a AIG Excess Liability Insurance International Limited f/k/a Starr Excess Liability Insurance Company Ltd.; ALLIANZ GLOBAL RISK US INSURANCE COMPANY; ALLIED WORLD NATIONAL ASSURANCE COMPANY; ALTERRA AMERICA INSURANCE COMPANY; AMERICAN CENTENNIAL INSURANCE COMPANY; AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY; AMERICAN HOME ASSURANCE COMPANY; AMERICAN RE-INSURANCE COMPANY; AMERICAN ZURICH INSURANCE COMPANY; ARCH INSURANCE COMPANY; ASPEN AMERICAN INSURANCE COMPANY; BERKLEY NATIONAL INSURANCE | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Case Code:** **Jury Trial Demanded** |

COMPANY; CITY INSURANCE COMPANY; COLONY )
INSURANCE COMPANY; COLUMBIA CASUALTY )
COMPANY; CONTINENTAL CASUALTY COMPANY; )
CONTINENTAL INSURANCE COMPANY; )
EMPLOYERS MUTUAL CASUALTY COMPANY; )
ENDURANCE AMERICAN SPECIALTY INSURANCE )
COMPANY; ENDURANCE RISK SOLUTIONS )
ASSURANCE CO.; EXECUTIVE RISK INDEMNITY INC. )
f/k/a American Excess Insurance Company; FEDERAL )
INSURANCE COMPANY; FIRST STATE INSURANCE )
COMPANY; GENERAL SECURITY INDEMNITY )
COMPANY OF ARIZONA; GIBRALTAR INSURANCE )
COMPANY; GOODRICH & WATSON INSURERS, INC. )
f/k/a Insco Insurance Group; GRANITE STATE )
INSURANCE COMPANY; GREAT AMERICAN E&S )
INSURANCE COMPANY; GREAT  AMERICAN SPIRIT )
INSURANCE COMPANY; HARBOR INSURANCE )
COMPANY; ILLINOIS UNION INSURANCE COMPANY; )
INSURANCE COMPANY OF NORTH AMERICA; )
INTERSTATE FIRE & CASUALTY COMPANY; )
IRONSHORE SPECIALTY INSURANCE COMPANY f/k/a )
TIG Specialty Insurance Company; LEXINGTON )
INSURANCE COMPANY; LIBERTY INSURANCE )
UNDERWRITERS INC.; LIBERTY MUTUAL )
INSURANCE COMPANY; LIBERTY SURPLUS )
INSURANCE CORPORATION; LUMBERMENS )
MUTUAL CASUALTY COMPANY; NATIONAL FIRE & )
MARINE INSURANCE COMPANY;  NATIONAL UNION )
FIRE INSURANCE COMPANY OF PITTSBURGH, PA; )
NEW ENGLAND INSURANCE COMPANY; NEW )
HAMPSHIRE INSURANCE COMPANY; NORTH )
AMERICAN CAPACITY INSURANCE COMPANY; )
OAKWOOD INSURANCE COMPANY; OHIO )
CASUALTY INSURANCE COMPANY; OLD REPUBLIC )
RISK MANAGEMENT, INC.; RSUI INDEMNITY )
COMPANY; STARR INDEMNITY & LIABILITY )
COMPANY; THE HOME INSURANCE COMPANY; THE )
TRAVELERS INDEMNITY COMPANY; WESTCHESTER )
SURPLUS LINES INSURANCE COMPANY; XL )
INSURANCE AMERICA, INC.;  *and* JOHN DOE )
DEFENDANTS 1-20, )
)
                    *Defendants.* )
)

To the above-named Defendant:

You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons, you must respond with a written Answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint. The Court may reject or disregard an Answer that does not follow the requirements of the statutes. The Answer must be sent or delivered to the Court, whose address is Marathon County Circuit Court, 500 Forest Street, Wausau WI 54403 and to the attorneys for Plaintiff, Napoli Shkolnik PLLC, whose address is 360 Lexington Avenue, 11th Floor, New York NY 10017.

You may have an attorney help or represent you. If you do not provide a proper Answer within forty-five (45) days, the Court may grant judgment against you for the award of money damages or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money damages may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

Dated: New York, New York
       November 30, 2023

**NAPOLI SHKOLNIK**

*/s/ Hunter Shkolnik*
Andrew Croner, Esq.
*(Pro Hac Vice Motion to Be Filed)*
Patrick Lanciotti, Esq.
*(Pro Hac Vice Motion to Be Filed)*
Nicholas Mindicino, Esq.
*(Pro Hac Vice Motion to Be Filed)*
360 Lexington Avenue, 11th Floor
New York, New York 10017
(212) 397-1000
acroner@napolilaw.com
planciotti@napolilaw.com
nmindicino@napolilaw.com

3

Paul J. Napoli, Esq.
*(Pro Hac Vice Motion to Be Filed)*
Coral M. Odiot-Rivera, Esq.
*(Pro Hac Vice Motion to Be Filed)*
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com
codiot@nsprlaw.com

***Attorney for Plaintiff***

**To:**

**AGC CHEMICALS AMERICAS, INC.**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

**AMEREX CORPORATION**
c/o James M. Proctor II
2900 Highway 280
Suite 300
Birmingham, AL  35223

**ARCHROMA U.S., INC.**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

**ARKEMA INC.**
900 First Avenue
King of Prussia, PA  19406

**BASF CORPORATION**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

**BUCKEYE FIRE EQUIPMENT COMPANY**
c/o A Haon Corporate Agent, Inc.
29225 Chagrin Boulevard
Suite 350
Pepper Pike, OH 44122

**CHEMDESIGN PRODUCTS, INC.**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

**CHEMGUARD INC.**
c/o The Prentice-Hall Corporation System, Inc.
251 Little Falls Drive
Wilmington, DE 19808

**CHEMICALS, INC.**
c/o Ashok K. Moza
12321 Hatcherville Road
Baytown, TX 77521

**CLARIANT CORPORATION**
c/o Corporation Service Company
8040 Excelsior Drive
Suite 400
Madison, WI 53717

**DEEPWATER CHEMICALS, INC.**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE 19801

**DYNAX CORPORATION**
c/o Corporate Systems LLC
3500 South Dupont Highway
Dover, DE 19901

**NATION FORD CHEMICAL COMPANY**
c/o John A. Dickson, IV
2300 Bank Street
Fort Mill, SC 29715

**TYCO FIRE PRODUCTS LP**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE 19801

**ACE AMERICAN INSURANCE COMPANY**
436 Walnut Street
Philadelphia, PA 19106

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY**
436 Walnut Street
Philadelphia, PA 19106

**AETNA CASUALTY AND SURETY COMPANY**
151 Farmington Avenue
Hartford, CT 06156

**AFFILIATED FM INSURANCE COMPANY**
270 Central Avenue
Johnston, RI 02919

**AGRICULTURAL INS. CO. D/B/A AMERICAN AGRICULTURAL INSURANCE COMPANY**
1501 E. Woodfield Road
Suite 300
Schaumburg, IL 60173

**AIG SPECIALTY INSURANCE COMPANY F/K/A CHARTIS SPECIALTY INSURANCE COMPANY**
300 S Riverside Plaza
Suite 2100
Chicago, IL 60606

**AIG SPECIALTY INSURANCE GROUP F/K/A CHARTIS SELECT INSURANCE COMPANY F/K/A AIG EXCESS LIABILITY INSURANCE INTERNATIONAL LIMITED F/K/A STARR EXCESS LIABILITY INSURANCE COMPANY LTD**
175 Water Street
18th Floor
New York, NY 10038

**ALLIANZ GLOBAL RISK US INSURANCE COMPANY**
225 West Washington Street
Suite 1800
Chicago, IL 60606

6

**ALLIED WORLD NATIONAL ASSURANCE COMPANY**
199 Water Street
New York, NY  10038

**ALTERRA AMERICA INSURANCE COMPANY**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

**AMERICAN CENTENNIAL INSURANCE COMPANY**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

**AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY**
1 Liberty Plaza
Floor 3
New York, NY  10006

**AMERICAN HOME ASSURANCE COMPANY**
175 Water Street
New York, NY  10038

**AMERICAN RE-INSURANCE COMPANY**
555 College Road E
Princeton, NJ  08540

**AMERICAN ZURICH INSURANCE COMPANY**
1299 Zurich Way
Schaumburg, IL  60196

**ARCH INSURANCE COMPANY**
2345 Grand Boulevard
Suite 900
Kansas City, MO  64108

**ASPEN AMERICAN INSURANCE COMPANY**
175 Capital Boulevard
Suite 300
Rocky Hill, CT  06067

**BERKLEY NATIONAL INSURANCE COMPANY**
11201 Douglas Avenue
Urbandale, IA  50322

**CITY INSURANCE COMPANY**
2000 River Edge Parkway
Suite 1000
Atlanta, GA  30328

**COLONY INSURANCE COMPANY**
8720 Stony Point Parkway
Suite 400
Richmond, VA  23235

**COLUMBIA CASUALTY COMPANY**
151 North Franklin Street
Chicago, IL  60606

**CONTINENTAL CASUALTY COMPANY**
151 North Franklin Street
Chicago, IL  60606

**CONTINENTAL INSURANCE COMPANY**
151 North Franklin Street
Chicago, IL  60606

**EMPLOYERS MUTUAL CASUALTY COMPANY**
2121 North 117th Avenue
Suite 310
Omaha, NE  68164

**ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

**ENDURANCE RISK SOLUTIONS ASSURANCE CO.**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

**EXECUTIVE RISK INDEMNITY INC. F/K/A AMERICAN EXCESS INSURANCE COMPANY**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

8

**FEDERAL INSURANCE COMPANY**
202 North Illinois Street
Suite 2600
Indianapolis, IN  46204

**FIRST STATE INSURANCE COMPANY**
c/o The Corporation Trust Company
Corporation Trust Center
1209 North Orange Street
Wilmington, DE  19801

**GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA**
199 Water Street
Floor 21
New York, NY  10038

**GIBRALTAR INSURANCE COMPANY**
5120 Woodway Drive
# 5020
Houston, TX  77056

**GOODRICH & WATSON INSURERS, INC. F/K/A INSCO INSURANCE GROUP**
11837 Rock Landing Drive
Suite 102
Newport News, VA  23606

**GRANITE STATE INSURANCE COMPANY**
1271 Avenue of the Americas
Floor C3
New York, NY  10020

**GREAT AMERICAN E&S INSURANCE COMPANY**
c/o United Agent Group Inc.
1521 Concord Pike
Suite 201
Wilmington, DE  19803

**GREAT AMERICAN SPIRIT INSURANCE COMPANY**
580 Walnut Street
Suite S900
Cincinnati, OH  45202

**HARBOR INSURANCE COMPANY**
4501 East 31st Street
Tulsa, OK  74135

**ILLINOIS UNION INSURANCE COMPANY**
525 West Monroe Street
Suite 400
Chicago, IL  60661

**INSURANCE COMPANY OF NORTH AMERICA**
3002 Timberline Road
Marietta, GA  30062

**INTERSTATE FIRE & CASUALTY COMPANY**
33 West Monroe Street
Chicago, IL  60603

**IRONSHORE SPECIALTY INSURANCE COMPANY F/K/A TIG SPECIALTY INSURANCE COMPANY**
8601 North Scottsdale Road
Suite 300
Scottsdale, AZ  85253

**LEXINGTON INSURANCE COMPANY**
c/o Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

**LIBERTY INSURANCE UNDERWRITERS INC.**
2815 Forbs Avenue
Suite 200
Hoffman Estates, IL  60192

**LIBERTY MUTUAL INSURANCE COMPANY**
175 Berkeley Street
Boston, MA  02116

**LIBERTY SURPLUS INSURANCE CORPORATION**
175 Berkeley Street
Boston, MA  02116

**LUMBERMENS MUTUAL CASUALTY COMPANY**
1861 North Rock Road
Suite 202
Wichita, KS  67206

**NATIONAL FIRE & MARINE INSURANCE COMPANY**
1314 Douglas Street
Suite 1400
Omaha, NE  68102

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA**
70 Pine Street
Floor 50
New York, NY  10005

**NEW ENGLAND INSURANCE COMPANY**
1 Hartford Plaza
Hartford, CT  06155

**NEW HAMPSHIRE INSURANCE COMPANY**
70 Pine Street
Floor 23
New York, NY  10005

**NORTH AMERICAN CAPACITY INSURANCE COMPANY**
650 Elm Street
Suite 600
Manchester, NH  03101

**OAKWOOD INSURANCE COMPANY**
2908 Poston Avenue
Nashville, TN  37203

**OHIO CASUALTY INSURANCE COMPANY**
175 Berkeley Street
Boston, MA  02116

**OLD REPUBLIC RISK MANAGEMENT, INC.**
c/o United States Corporation Company
251 Little Falls Drive
Wilmington, DE  19808

**RSUI INDEMNITY COMPANY**
945 East Paces Ferry Road
Suite 1800
Atlanta, GA  30326

**STARR INDEMNITY & LIABILITY COMPANY**
399 Park Avenue
Floor 2
New York, NY  10022

**THE HOME INSURANCE COMPANY**
59 Maiden Lane
New York, NY  10038

**THE TRAVELERS INDEMNITY COMPANY**
1 Tower Square
Hartford, CT  06183

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY**
500 Colonial Center Parkway
Suite 200
Roswell, GA  30076

**XL INSURANCE AMERICA, INC.**
70 Seaview Avenue
Suite 1
Stamford, CT  06902

FILED
11-30-2023
CLERK OF CIRCUIT COURT
MARATHON COUNTY
2023CV000707
Honorable Gregory J. Strasser
Branch 4

**STATE OF WISCONSIN**
**CIRCUIT COURT**
**MARATHON COUNTY**

|  |  |  |
|---|---|---|
| CITY OF WAUSAU, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | **Case No:** |
| *-vs -* | ) | |
| | ) | |
| | ) | **Case Code:** |
| AGC CHEMICALS AMERICAS, INC.; AMEREX | ) | |
| CORPORATION; ARKEMA INC.; ARCHROMA U.S., | ) | |
| INC.; BASF CORPORATION, individually and as successor | ) | |
| in interest to Ciba Inc.; BUCKEYE FIRE EQUIPMENT | ) | **Jury Trial Demanded** |
| COMPANY; CHEMDESIGN PRODUCTS, INC.; | ) | |
| CHEMGUARD INC.; CHEMICALS, INC.;  CLARIANT | ) | |
| CORPORATION, individually and as successor in interest to | ) | |
| Sandoz Chemical Corporation; DEEPWATER | ) | |
| CHEMICALS, INC.; DYNAX CORPORATION; NATION | ) | |
| FORD CHEMICAL COMPANY; TYCO FIRE | ) | |
| PRODUCTS, LP, individually and as successor in interest to | ) | |
| The Ansul Company; ACE AMERICAN INSURANCE | ) | |
| COMPANY; ACE PROPERTY AND CASUALTY | ) | |
| INSURANCE COMPANY; AETNA CASUALTY AND | ) | |
| SURETY COMPANY; AFFILIATED FM INSURANCE | ) | |
| COMPANY; AGRICULTURAL INS. CO. d/b/a American | ) | |
| Agricultural Insurance Company; AIG SPECIALTY | ) | |
| INSURANCE COMPANY f/k/a Chartis Specialty Insurance | ) | |
| Company; AIG SPECIALTY INSURANCE GROUP f/k/a | ) | |
| Chartis Select Insurance Company f/k/a AIG Excess Liability | ) | |
| Insurance International Limited f/k/a Starr Excess Liability | ) | |
| Insurance Company Ltd.; ALLIANZ GLOBAL RISK US | ) | |
| INSURANCE COMPANY; ALLIED WORLD NATIONAL | ) | |
| ASSURANCE COMPANY; ALTERRA AMERICA | ) | |
| INSURANCE COMPANY; AMERICAN CENTENNIAL | ) | |
| INSURANCE COMPANY; AMERICAN GUARANTEE & | ) | |
| LIABILITY INSURANCE COMPANY; AMERICAN | ) | |
| HOME ASSURANCE COMPANY; AMERICAN RE- | ) | |
| INSURANCE COMPANY; AMERICAN ZURICH | ) | |
| INSURANCE COMPANY; ARCH INSURANCE | ) | |
| COMPANY; ASPEN AMERICAN INSURANCE | ) | |
| COMPANY; BERKLEY NATIONAL INSURANCE | ) | |

COMPANY; CITY INSURANCE COMPANY; COLONY          )
INSURANCE COMPANY; COLUMBIA CASUALTY             )
COMPANY; CONTINENTAL CASUALTY COMPANY;           )
CONTINENTAL INSURANCE COMPANY;                   )
EMPLOYERS MUTUAL CASUALTY COMPANY;               )
ENDURANCE AMERICAN SPECIALTY INSURANCE           )
COMPANY; ENDURANCE RISK SOLUTIONS                )
ASSURANCE CO.; EXECUTIVE RISK INDEMNITY INC.     )
f/k/a American Excess Insurance Company; FEDERAL )
INSURANCE COMPANY; FIRST STATE INSURANCE         )
COMPANY; GENERAL SECURITY INDEMNITY              )
COMPANY OF ARIZONA; GIBRALTAR INSURANCE          )
COMPANY; GOODRICH & WATSON INSURERS, INC.        )
f/k/a Insco Insurance Group; GRANITE STATE       )
INSURANCE COMPANY; GREAT AMERICAN E&S            )
INSURANCE COMPANY; GREAT  AMERICAN SPIRIT        )
INSURANCE COMPANY; HARBOR INSURANCE              )
COMPANY; ILLINOIS UNION INSURANCE COMPANY;       )
INSURANCE COMPANY OF NORTH AMERICA;              )
INTERSTATE FIRE & CASUALTY COMPANY;              )
IRONSHORE SPECIALTY INSURANCE COMPANY f/k/a      )
TIG Specialty Insurance Company; LEXINGTON       )
INSURANCE COMPANY; LIBERTY INSURANCE             )
UNDERWRITERS INC.; LIBERTY MUTUAL                )
INSURANCE COMPANY; LIBERTY SURPLUS               )
INSURANCE CORPORATION; LUMBERMENS                )
MUTUAL CASUALTY COMPANY; NATIONAL FIRE &         )
MARINE INSURANCE COMPANY;  NATIONAL UNION        )
FIRE INSURANCE COMPANY OF PITTSBURGH, PA;        )
NEW ENGLAND INSURANCE COMPANY; NEW               )
HAMPSHIRE INSURANCE COMPANY; NORTH               )
AMERICAN CAPACITY INSURANCE COMPANY;             )
OAKWOOD INSURANCE COMPANY; OHIO                  )
CASUALTY INSURANCE COMPANY; OLD REPUBLIC         )
RISK MANAGEMENT, INC.; RSUI INDEMNITY            )
COMPANY; STARR INDEMNITY & LIABILITY             )
COMPANY; THE HOME INSURANCE COMPANY; THE         )
TRAVELERS INDEMNITY COMPANY; WESTCHESTER         )
SURPLUS LINES INSURANCE COMPANY; XL              )
INSURANCE AMERICA, INC.;  and  JOHN DOE          )
DEFENDANTS 1-20,                                 )
                                                 )
            *Defendants.*                        )
                                                 )

2

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff CITY OF WAUSAU ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against the named "AFFF Defendants" AGC CHEMICALS AMERICAS INC., AMEREX CORPORATION, ARKEMA INC., ARCHROMA U.S. INC., BASF CORPORATION, BUCKEYE FIRE EQUIPMENT COMPANY, CHEMDESIGN PRODUCTS INC., CHEMGUARD INC., CHEMICALS, INC., CLARIANT CORPORATION, DEEPWATER CHEMICALS, INC., DYNAX CORPORATION, NATION FORD CHEMICAL COMPANY, INC., and TYCO FIRE PRODUCTS, LP, and DOE DEFENDANTS 1-20, fictitious names whose present identifies are unknown.

Additionally, Plaintiff hereby files this Complaint against the named "Insurance Company Defendants", ACE AMERICAN INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, AETNA CASUALTY AND SURETY COMPANY, AFFILIATED FM INSURANCE COMPANY, AGRICULTURAL INS. CO. d/b/a American Agricultural Insurance Company, AIG SPECIALTY INSURANCE COMPANY f/k/a Chartis Specialty Insurance Company, AIG SPECIALTY INSURANCE GROUP f/k/a Chartis Select Insurance Company f/k/a AIG Excess Liability Insurance International Limited f/k/a Starr Excess Liability Insurance Company Ltd, ALLIANZ GLOBAL RISK US INSURANCE COMPANY, ALLIED WORLD NATIONAL ASSURANCE COMPANY, ALTERRA AMERICA INSURANCE COMPANY, AMERICAN CENTENNIAL INSURANCE COMPANY, AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AMERICAN RE-INSURANCE COMPANY, AMERICAN ZURICH INSURANCE COMPANY, ARCH INSURANCE COMPANY, ASPEN AMERICAN INSURANCE COMPANY, BERKLEY NATIONAL INSURANCE COMPANY, CITY INSURANCE COMPANY, COLONY INSURANCE COMPANY, COLUMBIA CASUALTY

3

COMPANY, CONTINENTAL CASUALTY COMPANY, CONTINENTAL INSURANCE COMPANY, EMPLOYERS MUTUAL CASUALTY COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, ENDURANCE RISK SOLUTIONS ASSURANCE CO., EXECUTIVE RISK INDEMNITY INC. f/k/a American Excess Insurance Company, FEDERAL INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, GIBRALTAR INSURANCE COMPANY, GOODRICH & WATSON INSURERS, INC. f/k/a INSCO INSURANCE GROUP, GRANITE STATE INSURANCE COMPANY, GREAT AMERICAN E&S INSURANCE COMPANY, GREAT AMERICAN SPIRIT INSURANCE COMPANY, HARBOR INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, INTERSTATE FIRE & CASUALTY COMPANY, IRONSHORE SPECIALTY INSURANCE COMPANY f/k/a TIG Specialty Insurance Company, LEXINGTON INSURANCE COMPANY, LIBERTY INSURANCE UNDERWRITERS INC., LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY SURPLUS INSURANCE CORPORATION, LUMBERMENS MUTUAL CASUALTY COMPANY, NATIONAL FIRE & MARINE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, NEW ENGLAND INSURANCE COMPANY, NEW HAMPSHIRE INSURANCE COMPANY, NORTH AMERICAN CAPACITY INSURANCE COMPANY, OAKWOOD INSURANCE COMPANY, OHIO CASUALTY INSURANCE COMPANY, OLD REPUBLIC RISK MANAGEMENT, INC., RSUI INDEMNITY COMPANY, STARR INDEMNITY & LIABILITY COMPANY, THE HOME INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, WESTCHESTER SURPLUS LINES INSURANCE

4

COMPANY, and XL INSURANCE AMERICA, INC., (collectively "Defendants") and alleges, upon information and belief, as follows:

## INTRODUCTION

1.      This action arises from the foreseeable contamination of groundwater by the use of aqueous film-forming foam ("AFFF") products that contained per- and poly-fluoroalkyl substances ("PFAS"), including perfluorooctanoic acid ("PFOA").

2.      PFOA is a fluorosurfactant that repels oil, grease, and water. PFOA, and/or its chemical precursors, are or were components of AFFF products, which are firefighting suppressant agents used in training and firefighting activities for fighting Class B fires.  Class B fires include fires involving hydrocarbon fuels such as petroleum or other flammable liquids.

3.      PFOA is mobile, persists indefinitely in the environment, bioaccumulates in individual organisms and humans, and biomagnifies up the food chain.  PFOA is also associated with multiple and significant adverse health effects in humans, including but not limited to kidney cancer, testicular cancer, high cholesterol, thyroid disease, ulcerative colitis, and pregnancy-induced hypertension.

4.      At various times from the 1970s through today, Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or poly- and perfluorinated chemicals contained in AFFF (collectively, "AFFF/Component Products").

5.      Defendants designed, manufactured, marketed, distributed, and/or sold AFFF/Component Products despite knowing that PFAS are toxic, persist indefinitely, and would be routinely released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants.

6.    Since its creation in the 1970s, AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants, and/or that contained fluorosurfactants and/or PFCs designed, manufactured, marketed, distributed, and/or sold by Defendants, was sold to fire departments such as the Wausau Fire Department ("WFD"), which used it as directed and intended by Defendants, and subsequently released it into the environment during fire protection, training, and response activities, resulting in widespread PFAS contamination.

7.    AFFF Defendants purchased commercial general liability and excess umbrella insurance policies from the Insurance Company Defendants to cover liability, in whole or in part, for Plaintiff' injuries caused by the use of AFFF.

8.    These policies were in full force and effect during the time that the AFFF Defendants committed the actions complained of herein.

9.    Plaintiff is the owner and operator of a water system serving approximately 16,000 residents located in and around the City of Wausau, WI.

10.    Plaintiff's system draws the drinking water it provides to customers from six (6) groundwater wells.

11.    Plaintiff has detected PFAS in its groundwater wells.

12.    On information and belief, the PFAS contamination described above is a direct and proximate result of fire protection, training, and response activities WFD, resulting in the migration of PFAS into Plaintiff's water supply.

13.    In order to ensure that it can continue to provide clean and safe water to residences, Plaintiff has and will continue to take actions to address the above contamination of its property and its potable water supply caused by the Defendants.

14.     Such actions include but are not limited to additional testing and monitoring for PFAS; planning, designing, purchasing, installing, and maintaining water filtration systems to remove these chemicals; infrastructure modifications; contingency planning; and community outreach.

15.     Due to the persistent and long-term nature of PFAS contamination, Plaintiff is expected to suffer damages and incur the costs associated with these and other ongoing necessary remedial actions for many years to come.

16.     Through this action, Plaintiff seeks compensatory damages for the harm done to its property and the costs associated with investigating, remediating, and monitoring its drinking water supplies contaminated with PFAS due to the use of AFFF at the WFD.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over this matter pursuant to Wis. Stat. §753.03 (general jurisdiction).

18.     This Court has personal jurisdiction over the defendants as each of them are doing business in Wisconsin and engage in business in Wisconsin such that it is reasonably foreseeable that they would be subject to the jurisdiction of the courts of this State.

19.     An actual controversy exists between Defendants with respect to matters described herein. The matter is ripe for adjudication.

## PARTIES

**A.     Plaintiff**

20.     Plaintiff is a municipal corporation organized under the laws of the State of Wisconsin, with its principal place of business located at 407 Grant Street, Wausau, WI 54403.

**B.     Defendants**

21.     The term "Defendants" refers to all Defendants named herein jointly and severally.

7

i.    Insurance Company Defendants

22.    **Defendant Ace American Insurance Company** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

23.    Upon information and belief, Defendant Ace American Insurance Company is the successor in interest to Cigna Insurance Company and Fireman's Fund Insurance Company.

24.    Upon information and belief, Defendant Ace American Insurance Company and its predecessors in interest, Cigna Insurance Company and Fireman's Fund Insurance Company, issued policies of comprehensive general liability and excess umbrella insurance to Amerex, BASF, and Tyco/Chemguard, which policies were in full force and effect during the time that Amerex, BASF, and Tyco/Chemguard committed the actions complained of herein.

25.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex, BASF, and Tyco/Chemguard to Plaintiff for its injuries caused by Amerex, BASF, and Tyco/Chemguard's negligence, and, accordingly, Defendant Ace American Insurance Company, individually and as successor in interest to Cigna Insurance Company and Fireman's Fund Insurance Company, is subject to suit by Plaintiff under Wis. Stat. § 632.24.

26.    **Defendant ACE Property and Casualty Insurance Company** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 436 Walnut Street, Philadelphia, PA 19106.

27.    Upon information and belief, Defendant ACE Property and Casualty Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

8

28.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant ACE Property and Casualty Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

29.    **Defendant Aetna Casualty and Surety Company** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 151 Farmington Avenue, Hartford, CT 06156.

30.    Upon information and belief, Defendant Aetna Casualty and Surety Company issued policies of comprehensive general liability and excess umbrella insurance to BASF and Tyco/Chemguard, which policies were in full force and effect during the time that BASF and Tyco/Chemguard committed the actions complained of herein.

31.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF and Tyco/Chemguard to Plaintiff for its injuries caused by BASF and Tyco/Chemguard's negligence, and, accordingly, Defendant Aetna Casualty and Surety Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

32.    **Defendant Affiliated FM Insurance Company** is a corporation organized under the laws of the State of Rhode Island, with its principal place of business at 270 Central Avenue, Johnston, RI 02919.

33.    Upon information and belief, Defendant Affiliated FM Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

34.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and,

accordingly, Defendant Affiliated FM Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

35.     **Defendant Agricultural Ins. Co. d/b/a American Agricultural Insurance Company** is a corporation organized under the laws of the State of South Dakota, with its principal place of business at 1501 E. Woodfield Road, Suite 300, Schaumburg, IL 60173.

36.     Upon information and belief, Defendant Agricultural Ins. Co. issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

37.     Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Agricultural Ins. Co. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

38.     **Defendant AIG Specialty Insurance Company f/k/a Chartis Specialty Insurance Company** is a corporation organized under the laws of the State of West Virginia, with its principal place of business at 300 S Riverside Plaza, Suite 2100, Chicago, IL 60606.

39.     Upon information and belief, Defendant AIG Specialty Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

40.     Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant AIG Specialty Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

41. **Defendant AIG Specialty Insurance Group f/k/a Chartis Select Insurance Company f/k/a AIG Excess Liability Insurance International Limited f/k/a Starr Excess Liability Insurance Company Ltd.** is a corporation organized under the laws of the State of Illinois, with its principal place of business at 175 Water Street, 18th Floor, New York, NY 10038.

42. Upon information and belief, Defendant AIG Specialty Insurance Group issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

43. Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant AIG Specialty Insurance Group is subject to suit by Plaintiff under Wis. Stat. § 632.24.

44. **Defendant Allianz Global Risk US Insurance Company** is a corporation organized under the laws of the State of Illinois, with its principal place of business at 225 West Washington Street, Suite 1800, Chicago, IL 60606.

45. Upon information and belief, Defendant Allianz Global Risk US Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

46. Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Allianz Global Risk US Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

47.    **Defendant Allied World National Assurance Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 199 Water Street, New York, NY 10038.

48.    Upon information and belief, Defendant Allied World National Assurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

49.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Allied World National Assurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

50.    **Defendant Alterra America Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at Ten Parkway North, Deerfield, IL 60015.

51.    Upon information and belief, Defendant Alterra America Insurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

52.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Alterra America Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

53.    **Defendant American Centennial Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 3501 Silverside Road, Suite 203, Wilmington, DE 19810.

54.    Upon information and belief, Defendant American Centennial Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

55.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant American Centennial Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

56.    **Defendant American Guarantee & Liability Insurance Company** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 1 Liberty Plaza, Floor 32, New York, NY 10006.

57.    Upon information and belief, Defendant American Guarantee & Liability Insurance Company issued policies of excess umbrella insurance to Amerex and Tyco/Chemguard, which policies were in full force and effect during the time that Amerex and Tyco/Chemguard committed the actions complained of herein.

58.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex and Tyco/Chemguard to Plaintiff for its injuries caused by Amerex and Tyco/Chemguard's negligence, and, accordingly, Defendant American Guarantee & Liability Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

59.    **Defendant American Home Assurance Company** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 175 Water Street, New York, NY 10038.

60.    Upon information and belief, Defendant American Home Assurance Company issued policies of comprehensive general liability and excess umbrella insurance to BASF and

13

Tyco/Chemguard, which policies were in full force and effect during the time that BASF and Tyco/Chemguard committed the actions complained of herein.

61.     Upon information and belief, said policies cover the liability, in whole or in part, of BASF and Tyco/Chemguard to Plaintiff for its injuries caused by BASF and Tyco/Chemguard's negligence, and, accordingly, Defendant American Home Assurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

62.     **Defendant American Re-Insurance Company** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 555 College Road E, Princeton, NJ 08540.

63.     Upon information and belief, Defendant American Re-Insurance Company issued policies of excess umbrella insurance to BASF and Tyco/Chemguard, which policies were in full force and effect during the time that BASF and Tyco/Chemguard committed the actions complained of herein.

64.     Upon information and belief, said policies cover the liability, in whole or in part, of BASF and Tyco/Chemguard to Plaintiff for its injuries caused by BASF and Tyco/Chemguard's negligence, and, accordingly, Defendant American Re-Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

65.     **Defendant American Zurich Insurance Company** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 1299 Zurich Way, Schaumburg, IL 60196.

66.     Upon information and belief, Defendant American Zurich Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

14

67.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant American Zurich Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

68.    **Defendant Arch Insurance Company** is a corporation organized under the laws of the State of Missouri, with its principal place of business at 2345 Grand Blvd, Suite 900, Kansas City, MO 64108.

69.    Upon information and belief, Defendant Arch Insurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

70.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for their injuries caused by Amerex's negligence, and, accordingly, Defendant Arch Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

71.    **Defendant Aspen American Insurance Company** is a corporation organized under the laws of the State of Texas, with its principal place of business at 175 Capital Blvd, Suite 300, Rocky Hill, CT 06067.

72.    Upon information and belief, Defendant Aspen American Insurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

73.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Aspen American Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

74.     **Defendant Berkley National Insurance Company** is a corporation organized under the laws of the State of Iowa, with its principal place of business at 11201 Douglas Avenue, Urbandale, IA 50322.

75.     Upon information and belief, Defendant Berkley National Insurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

76.     Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Berkley National Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

77.     **Defendant City Insurance Company** is a corporation organized under the laws of the State of Georgia, with its principal place of business at 2000 River Edge Parkway, Suite 1000, Atlanta, GA 30328.

78.     Upon information and belief, Defendant City Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

79.     Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant City Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

80.     **Defendant Colony Insurance Company** is a corporation organized under the laws of the State of Virginia, with its principal place of business at 8720 Stony Point Pkwy Suite 400, Richmond, VA 23235.

81.     Upon information and belief, Defendant Colony Insurance Company issued policies of commercial general liability and excess umbrella insurance to Buckeye, which policies

were in full force and effect during the time that Buckeye committed the actions complained of herein.

82.     Upon information and belief, said policies cover the liability, in whole or in part, of Buckeye to Plaintiff for its injuries caused by Buckeye's negligence, and, accordingly, Defendant Colony Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

83.     **Defendant Columbia Casualty Company** is a corporation organized under the laws of the State of Illinois, with its principal place of business at 151 N. Franklin Street, Chicago, IL 60606.

84.     Upon information and belief, Defendant Columbia Casualty Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

85.     Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Columbia Casualty Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

86.     **Defendant Continental Casualty Company** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 151 N. Franklin Street, Chicago, IL 60504.

87.     Upon information and belief, Defendant Continental Casualty Company issued policies of excess umbrella insurance to Amerex and Tyco/Chemguard, which policies were in full force and effect during the time that Amerex and Tyco/Chemguard committed the actions complained of herein.

88.     Upon information and belief, said policies cover the liability, in whole or in part, of Amerex and Tyco/Chemguard to Plaintiff for its injuries caused by Amerex and Tyco/Chemguard's negligence, and, accordingly, Defendant Continental Casualty Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

89.     **Defendant Continental Insurance Company** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 151 N. Franklin Street, Chicago, IL 60606.

90.     Upon information and belief, Defendant Continental Insurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

91.     Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Continental Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

92.     **Defendant Employers Mutual Casualty Company** is a corporation organized under the laws of the State of Iowa, with its principal place of business at 2121 N 117th Avenue, Suite 310, Omaha, NE 68164.

93.     Upon information and belief, Defendant Employers Mutual Casualty Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

94.     Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Employers Mutual Casualty Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

18

95.     **Defendant Endurance American Specialty Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 333 Westchester Ave, White Plains, NY 10604.

96.     Upon information and belief, Defendant Endurance American Specialty Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

97.     Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Endurance American Specialty Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

98.     **Defendant Endurance Risk Solutions Assurance Co.** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 4 Manhattanville Road, 3rd Floor, Purchase, NY 10577.

99.     Upon information and belief, Defendant Endurance Risk Solutions Assurance Co. issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

100.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Endurance Risk Solutions Assurance Co. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

101.    **Defendant Executive Risk Indemnity Inc. f/k/a American Excess Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 15 Mountainview Road, Warren, NJ 07059.

19

102.   Upon information and belief, Defendant Executive Risk Indemnity Inc. issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

103.   Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Executive Risk Indemnity Inc. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

104.   **Defendant Federal Insurance Company** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 202 N Illinois Street, Suite 2600, Indianapolis, IN 46204.

105.   Upon information and belief, Defendant Federal Insurance Company issued policies of excess umbrella insurance to BASF and Tyco/Chemguard, which policies were in full force and effect during the time that BASF and Tyco/Chemguard committed the actions complained of herein.

106.   Upon information and belief, said policies cover the liability, in whole or in part, of BASF and Tyco/Chemguard to Plaintiff for its injuries caused by BASF and Tyco/Chemguard's negligence, and, accordingly, Defendant Federal Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

107.   **Defendant First State Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 50 Federal Street, Floor 6, Boston, MA 02110.

108.   Upon information and belief, Defendant First State Insurance Company issued policies of excess umbrella insurance to BASF and Tyco/Chemguard, which policies were in full

force and effect during the time that BASF and Tyco/Chemguard committed the actions complained of herein.

109.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF and Tyco/Chemguard to Plaintiff for its injuries caused by BASF and Tyco/Chemguard's negligence, and, accordingly, Defendant First State Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

110.    **Defendant General Security Indemnity Company of Arizona** is a corporation organized under the laws of the State of Arizona, with its principal place of business at 199 Water Street, Floor 21, New York, NY 10038.

111.    Upon information and belief, Defendant General Security Indemnity Company of Arizona issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

112.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant General Security Indemnity Company of Arizona is subject to suit by Plaintiff under Wis. Stat. § 632.24.

113.    **Defendant Gibraltar Insurance Company** is a corporation organized under the laws of the State of South Carolina, with its principal place of business at 5120 Woodway Dr #5020, Houston, TX 77056.

114.    Upon information and belief, Defendant Gibraltar Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

21

115.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Gibraltar Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

116.    **Defendant Goodrich & Watson Insurers, Inc. f/k/a Insco Insurance Group** is a corporation organized under the laws of the State of Virginia, with its principal place of business at 11837 Rock Landing Drive, Suite 102, Newport News, VA 23606.

117.    Upon information and belief, Defendant Goodrich & Watson Insurers, Inc. issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

118.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Goodrich & Watson Insurers, Inc. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

119.    **Defendant Granite State Insurance Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 1271 Avenue OF The Americas, Floor C3, New York, NY 10020.

120.    Upon information and belief, Defendant Granite State Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

121.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Granite State Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

22

122. **Defendant Great American E&S Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 301 E Fourth Street, Cincinnati, OH 45202.

123. Upon information and belief, Defendant Great American E&S Insurance Company issued policies of commercial general liability and excess umbrella insurance to Buckeye, which policies were in full force and effect during the time that Buckeye committed the actions complained of herein.

124. Upon information and belief, said policies cover the liability, in whole or in part, of Buckeye to Plaintiff for its injuries caused by Buckeye's negligence, and, accordingly, Defendant Great American E&S Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

125. **Defendant Great American Spirit Insurance Company** is a corporation organized under the laws of the State of Ohio, with its principal place of business at 580 Walnut Street, Suite S900, Cincinnati, OH 45202.

126. Upon information and belief, Defendant Great American Spirit Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

127. Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Great American Spirit Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

23

128.   **Defendant Harbor Insurance Company** is a corporation organized under the laws of the State of Oklahoma, with its principal place of business at 4501 E 31st Street, Tulsa, OK 74135.

129.   Upon information and belief, Defendant Harbor Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

130.   Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Harbor Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

131.   **Defendant Illinois Union Insurance Company** is a corporation organized under the laws of the State of Illinois, with its principal place of business at 525 W Monroe Street, Suite 400, Chicago, IL 60661.

132.   Upon information and belief, Defendant Illinois Union Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

133.   Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Illinois Union Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

134.   **Defendant Insurance Company of North America** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 3002 Timberline Road, Marietta, GA 30062.

135.   Upon information and belief, Defendant Insurance Company of North America issued policies of comprehensive general liability and excess umbrella insurance to BASF and

Tyco/Chemguard, which policies were in full force and effect during the time that BASF and Tyco/Chemguard committed the actions complained of herein.

136.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF and Tyco/Chemguard to Plaintiff for its injuries caused by BASF and Tyco/Chemguard's negligence, and, accordingly, Defendant Insurance Company of North America is subject to suit by Plaintiff under Wis. Stat. § 632.24.

137.    **Defendant Interstate Fire & Casualty Company** is a corporation organized under the laws of the State of Vermont, with its principal place of business at 33 W Monroe St, Chicago, IL 60603.

138.    Upon information and belief, Defendant Interstate Fire & Casualty Company issued policies of excess umbrella insurance to Amerex and BASF, which policies were in full force and effect during the time that Amerex and BASF committed the actions complained of herein.

139.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex and BASF to Plaintiff for its injuries caused by Amerex and BASF's negligence, and, accordingly, Defendant Interstate Fire & Casualty Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

140.    **Defendant Ironshore Specialty Insurance Company f/k/a TIG Specialty Insurance Company** is a corporation organized under the laws of the State of Arizona, with its principal place of business at 8601 N Scottsdale Road Suite 300, Scottsdale, AZ 85253.

141.    Upon information and belief, Defendant Ironshore Specialty Insurance Company issued policies of general & pollution liability and excess umbrella insurance to ChemDesign and Tyco/Chemguard, which policies were in full force and effect during the time that ChemDesign and Tyco/Chemguard committed the actions complained of herein.

142.     Upon information and belief, said policies cover the liability, in whole or in part, ChemDesign and Tyco/Chemguard to Plaintiff for its injuries caused by ChemDesign and Tyco/Chemguard's negligence, and, accordingly, Defendant Ironshore Specialty Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

143.     **Defendant Lexington Insurance Company** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 436 Walnut St, Philadelphia, PA 19106.

144.     Upon information and belief, Defendant Lexington Insurance Company issued policies of commercial general liability and excess umbrella insurance to Amerex, BASF, and Tyco/Chemguard, which policies were in full force and effect during the time that Amerex, BASF, and Tyco/Chemguard committed the actions complained of herein.

145.     Upon information and belief, said policies cover the liability, in whole or in part, of Amerex, BASF, and Tyco/Chemguard to Plaintiff for its injuries caused by Amerex, BASF, and Tyco/Chemguard's negligence, and, accordingly, Defendant Lexington Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

146.     **Defendant Liberty Insurance Underwriters Inc.** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 2815 Forbs Avenue, Suite 200, Hoffman Estates, IL 60192.

147.     Upon information and belief, Defendant Liberty Insurance Underwriters Inc. issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

148.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant Liberty Insurance Underwriters Inc. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

149.    **Defendant Liberty Mutual Insurance Company** is a corporation organized under the laws of the State of Vermont, with its principal place of business at 175 Berkeley Street, Boston, MA 02116.

150.    Upon information and belief, Defendant Liberty Mutual Insurance Company issued policies of excess umbrella insurance to Buckeye, which policies were in full force and effect during the time that Buckeye committed the actions complained of herein.

151.    Upon information and belief, said policies cover the liability, in whole or in part, of Buckeye to Plaintiff for its injuries caused by Buckeye's negligence, and, accordingly, Defendant Liberty Mutual Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

152.    **Defendant Liberty Surplus Insurance Corporation** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 175 Berkeley Street, Boston, MA 02116.

153.    Upon information and belief, Defendant Liberty Surplus Insurance Corporation issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

154.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Liberty Surplus Insurance Corporation is subject to suit by Plaintiff under Wis. Stat. § 632.24.

155.    **Defendant Lumbermens Mutual Casualty Company** is a corporation organized under the laws of the State of Colorado, with its principal place of business at 1861 N Rock Road, Suite 202, Wichita, KS 67206.

156.    Upon information and belief, Defendant Lumbermens Mutual Casualty Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

157.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Lumbermens Mutual Casualty Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

158.    **Defendant National Fire & Marine Insurance Company** is a corporation organized under the laws of the State of Nebraska, with its principal place of business at 1314 Douglas Street, Suite 1400, Omaha, NE 68102.

159.    Upon information and belief, Defendant National Fire & Marine Insurance Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

160.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant National Fire & Marine Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

161.    **Defendant National Union Fire Insurance Company of Pittsburgh, PA** is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business at 70 Pine St, Floor 50, New York, NY 10005.

162.    Upon information and belief, Defendant National Union Fire Insurance Company of Pittsburgh, PA issued policies of comprehensive general liability and excess umbrella insurance to Amerex, BASF, and Tyco/Chemguard, which policies were in full force and effect during the time that Amerex, BASF, and Tyco/Chemguard committed the actions complained of herein.

163.    Upon information and belief, said policies cover the liability, in whole or in part, of Amerex, BASF, and Tyco/Chemguard to Plaintiff for its injuries caused by Amerex, BASF, and Tyco/Chemguard's negligence, and, accordingly, Defendant National Union Fire Insurance Company of Pittsburgh, PA is subject to suit by Plaintiff under Wis. Stat. § 632.24.

164.    **Defendant New England Insurance Company** is a corporation organized under the laws of the State of Colorado, with its principal place of business at 1 Hartford Plaza, Hartford, CT 06155.

165.    Upon information and belief, Defendant New England Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

166.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant New England Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

167.    **Defendant New Hampshire Insurance Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 70 Pine St, 23rd Floor, New York, NY 10005.

168.    Upon information and belief, Defendant New Hampshire Insurance Company issued policies of comprehensive general liability and excess umbrella insurance to

29

Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

169.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant New Hampshire Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

170.    **Defendant North American Capacity Insurance Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 650 Elm Street, Suite 600, Manchester, NH 03101.

171.    Upon information and belief, Defendant North American Capacity Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

172.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant North American Capacity Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

173.    **Defendant Oakwood Insurance Company** is a corporation organized under the laws of the State of Tennessee, with its principal place of business at 2908 Poston Avenue, Nashville, TN 37203.

174.    Upon information and belief, Defendant Oakwood Insurance Company is the successor in interest to Central National Insurance Company of Omaha.

175.    Upon information and belief, Central National Insurance Company of Omaha issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

176.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant Oakwood Insurance Company, as successor in interest to Central National Insurance Company of Omaha, is subject to suit by Plaintiff under Wis. Stat. § 632.24.

177.    **Defendant Ohio Casualty Insurance Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 175 Berkeley Street, Boston, MA 02116.

178.    Upon information and belief, Defendant Ohio Casualty Insurance Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

179.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Ohio Casualty Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

180.    **Defendant Old Republic Risk Management, Inc.** is a corporation organized under the laws of the State of Delaware, with its principal place of business at 445 S Moorland Road, Suite 300, Brookfield, WI 53005.

181.    Upon information and belief, Defendant Old Republic Risk Management, Inc. issued policies of commercial general liability and excess umbrella insurance to Tyco/Chemguard,

31

which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

182. Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant Old Republic Risk Management, Inc. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

183. **Defendant RSUI Indemnity Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 945 East Paces Ferry Road, Suite 1800, Atlanta, GA 30326.

184. Upon information and belief, Defendant RSUI Indemnity Company issued policies of excess umbrella insurance to Amerex, which policies were in full force and effect during the time that Amerex committed the actions complained of herein.

185. Upon information and belief, said policies cover the liability, in whole or in part, of Amerex to Plaintiff for its injuries caused by Amerex's negligence, and, accordingly, Defendant RSUI Indemnity Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

186. **Defendant Starr Indemnity & Liability Company** is a corporation organized under the laws of the State of Arizona, with its principal place of business at 399 Park Avenue, 2nd floor, New York, NY 10022.

187. Upon information and belief, Defendant Starr Indemnity & Liability Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

188. Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and,

accordingly, Defendant Starr Indemnity & Liability Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

189.    **Defendant The Home Insurance Company** is a corporation organized under the laws of the State of New Hampshire, with its principal place of business at 59 Maiden Lane, New York, NY 10038.

190.    Upon information and belief, Defendant The Home Insurance Company issued policies of excess umbrella insurance to BASF, which policies were in full force and effect during the time that BASF committed the actions complained of herein.

191.    Upon information and belief, said policies cover the liability, in whole or in part, of BASF to Plaintiff for its injuries caused by BASF's negligence, and, accordingly, Defendant The Home Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

192.    **Defendant The Travelers Indemnity Company** is a corporation organized under the laws of the State of Arkansas, with its principal place of business at 1 Tower Square, Hartford, CT 06183.

193.    Upon information and belief, Defendant The Travelers Indemnity Company issued policies of excess umbrella insurance to Tyco/Chemguard, which policies were in full force and effect during the time that Tyco/Chemguard committed the actions complained of herein.

194.    Upon information and belief, said policies cover the liability, in whole or in part, of Tyco/Chemguard to Plaintiff for its injuries caused by Tyco/Chemguard's negligence, and, accordingly, Defendant The Travelers Indemnity Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

195.   **Defendant Westchester Surplus Lines Insurance Company** is a corporation organized under the laws of the State of Georgia, with its principal place of business at 500 Colonial Center Parkway, Suite 200, Roswell, GA 30076.

196.   Upon information and belief, Defendant Westchester Surplus Lines Insurance Company issued policies of general liability excess umbrella insurance to Buckeye, which policies were in full force and effect during the time that Buckeye committed the actions complained of herein.

197.   Upon information and belief, said policies cover the liability, in whole or in part, of Buckeye to Plaintiff for its injuries caused by Buckeye's negligence, and, accordingly, Defendant Westchester Surplus Lines Insurance Company is subject to suit by Plaintiff under Wis. Stat. § 632.24.

198.   **Defendant XL Insurance America, Inc.** is a corporation organized under the laws of the State of Colorado, with its principal place of business at 70 Seaview Avenue, Suite 1, Stamford, CT 06902.

199.   Upon information and belief, Defendant XL Insurance America, Inc. issued policies of commercial general liability and excess umbrella insurance to Amerex and Tyco/Chemguard, which policies were in full force and effect during the time that Amerex and Tyco/Chemguard committed the actions complained of herein.

200.   Upon information and belief, said policies cover the liability, in whole or in part, of Amerex and Tyco/Chemguard to Plaintiff for its injuries caused by Amerex and Tyco/Chemguard's negligence, and, accordingly, Defendant XL Insurance America, Inc. is subject to suit by Plaintiff under Wis. Stat. § 632.24.

34

ii.   The AFFF Defendants

201.   The term **"AFFF Defendants"** refers collectively to Defendants, Amerex Corporation, Buckeye Fire Equipment Company, Chemguard Inc., and Tyco Fire Products L.P.

202.   **Defendant Amerex Corporation ("Amerex")** is a corporation organized and existing under the laws of the State of Alabama, with its principal place of business located at 7595 Gadsden Highway, Trussville, AL 35173.

203.   Amerex is a manufacturer of firefighting products. Beginning in 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

204.   In 2011, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

205.   On information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA.

206.   **Defendant Tyco Fire Products LP ("Tyco")** is a limited partnership organized under the laws of the State of Delaware, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143-2542.

207.   Tyco is the successor in interest of The Ansul Company ("Ansul"), having acquired Ansul in 1990.

208.   Beginning in or around 1975, Ansul designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA.

209.   After Tyco acquired Ansul in 1990, Tyco/Ansul continued to design, manufacture, market, distribute, and sell AFFF products containing PFAS, including but not limited to PFOA.

210.     **Defendant Chemguard, Inc. ("Chemguard")** is a corporation organized under the laws of the State of Texas, with its principal place of business located at One Stanton Street, Marinette, Wisconsin 54143.

211.     On information and belief, Chemguard designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA.

212.     On information and belief, Chemguard was acquired by Tyco International Ltd. in 2011.

213.     **Defendant Buckeye Fire Equipment Company ("Buckeye")** is a corporation organized under the laws of the State of Ohio, with its principal place of business located at 110 Kings Road, Kings Mountain, North Carolina 28086.

214.     On information and belief, Buckeye designed, manufactured, marketed, distributed, and sold AFFF products containing PFAS, including but not limited to PFOA.

215.     On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and sold AFFF products containing PFOA, and/or its chemical precursors that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at WFD.

        iii.   The Fluorosurfactant Defendants

216.     The term **"Fluorosurfactant Defendants"** refers collectively to Defendants Arkema Inc., BASF Corporation, ChemDesign Products Incorporated, Chemguard Inc., Deepwater Chemicals, Inc., and Dynax Corporation.

217.     **Defendant Arkema Inc.** is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business at 900 First Avenue, King of Prussia, PA 19406.

218.     Arkema Inc. develops specialty chemicals and polymers.

219.     Arkema, Inc. is an operating subsidiary of Arkema France, S.A.

220.    On information and belief, Arkema Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

221.    **Defendant BASF Corporation ("BASF")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 100 Park Avenue, Florham Park, NJ 07932.

222.    On information and belief, BASF is the successor-in-interest to Ciba. Inc. (f/k/a Ciba Specialty Chemicals Corporation).

223.    On information and belief, Ciba Inc. designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

224.    **Defendant ChemDesign Products, Inc. ("ChemDesign")** is a corporation organized under the laws of Delaware, with its principal place of business located at 2 Stanton Street, Marinette, WI 54143.

225.    On information and belief, ChemDesign designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

226.    **Defendant Deepwater Chemicals, Inc. ("Deepwater")** is a corporation organized under the laws of Delaware, with its principal place of business located at 196122 E County Road 40, Woodward, OK 73801.

227.    On information and belief, Deepwater Chemicals designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

37

228.    **Defendant Dynax Corporation ("Dynax")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 103 Fairview Park Drive, Elmsford, NY 10523.

229.    On information and belief, Dynax entered into the AFFF market on or about 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical stabilizers containing PFOA, and/or its chemical precursors.

230.    On information and belief, Dynax designed, manufactured, marketed, distributed, and sold fluorosurfactants and fluorochemical stabilizers containing PFOA, and/or its chemical precursors for use in AFFF products.

231.    On information and belief, Chemguard also designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products.

232.    On information and belief, the Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOA, and/or its chemical precursors for use in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at WFD.

iv.    The PFC Defendants

233.    The term **"PFC Defendants"** refers collectively to AGC Chemicals Americas Inc., Archroma U.S. Inc., ChemDesign Products Inc., Chemicals, Inc., Clariant Corporation, Deepwater Chemicals, Inc, and Nation Ford Chemical Company.

234.    **Defendant AGC Chemicals Americas, Inc. ("AGC")** is a corporation organized and existing under the laws of Delaware, having its principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.

38

235.    On information and belief, AGC Chemicals Americas, Inc. was formed in 2004 and is a subsidiary of AGC Inc., a foreign corporation organized under the laws of Japan, with its a principal place of business in Tokyo, Japan.

236.    AGC manufactures specialty chemicals.  It offers glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates.

237.    On information and belief, AGC designed, manufactured, marketed, distributed, and sold PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

238.    **Defendant Archroma U.S., Inc. ("Archroma")** is a corporation organized and existing under the laws of Delaware, with its a principal place of business at 5435 77 Center Drive, Charlotte, North Carolina 28217.

239.    On information and belief, Archroma was formed in 2013 when Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

240.    On information and belief, Archroma designed, manufactured, marketed, distributed, and sold PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

241.    **Defendant Chemicals, Inc. ("Chemicals, Inc.")** is a corporation organized and existing under the laws of Texas, with its principal place of business located at 12321 Hatcherville, Baytown, TX 77520.

242.    On information and belief, Chemicals, Inc. supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

39

243.    **Defendant Clariant Corporation ("Clariant")** is a corporation organized and existing under the laws of New York, with its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

244.    On information and belief, Clariant is the successor in interest to the specialty chemicals business of Sandoz Chemical Corporation ("Sandoz"). On information and belief, Sandoz spun off its specialty chemicals business to form Clariant in 1995.

245.    On information and belief, Clariant supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

246.    **Defendant Nation Ford Chemical Co. ("Nation Ford")** is a corporation organized and existing under the laws of South Carolina, with its principal place of business located at 2300 Banks Street, Fort Mill, SC 29715.

247.    On information and belief, Nation Ford supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

248.    On information and belief, ChemDesign and Deepwater Chemicals also supplied PFCs containing PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

249.    On information and belief, the PFC Defendants supplied PFCs containing PFOA, and/or its chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products that were stored, handled, used, trained with, tested equipment with, otherwise discharged, and/or disposed at WFD.

     v.    Doe Defendants 1-20

250.    Doe Defendants 1-20 are unidentified entities or persons whose names are presently unknown and whose actions, activities, omissions (a) may have permitted, caused and/or contributed to the contamination of Plaintiff's water sources or supply wells; or (b) may be

vicariously responsible for entities or persons who permitted, caused and/or contributed to the contamination of Plaintiff's water sources or supply wells; or (c) may be successors in interest to entities or persons who permitted, caused and/or permitted, contributed to the contamination of Plaintiff's water sources or supply wells. After reasonable search and investigation to ascertain the Doe Defendants actual names, the Doe Defendants' actual identities are unknown to Plaintiff as they are not linked with any of the Defendants on any public source.

251.   The Doe Defendants 1-20 either in their own capacity or through a party they are liable for: (1) designed, manufactured, marketed, distributed, and/or sold AFFF products containing PFOA, and/or their chemical precursors, and/or designed, manufactured, marketed, distributed, and/or sold the fluorosurfactants and/or PFCs contained in AFFF/Component Products; or (2) used, handled, transported, stored, discharged, disposed of, designed, manufactured, marketed, distributed, and/or sold PFOA, and/or its chemical precursors, or other non-AFFF products containing PFOA, and/or its chemical precursors; or (3) failed to timely perform necessary and reasonable response and remedial measures to releases of PFOA, and/or its chemical precursors, or other non-AFFF products containing PFOA, and/or its chemical precursors in to the environment in which Plaintiff's water supplies and well exist.

252.   The AFFF Defendants, Fluorosurfactant Defendants, PFC Defendants, and Doe Defendants are hereafter referred to collectively as a the "Manufacturer Defendants."

253.   All Manufacturer Defendants, at all times material herein, acted by and through their respective agents, servants, officers and employees, actual or ostensible, who then and there were acting within the course and scope of their actual or apparent agency, authority or duties. The Manufacturer Defendants are liable based on such activities, directly and vicariously.

41

254.    The Manufacturer Defendants represent all or substantially all of the market for AFFF/Component Products used at WFD.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

### A.    PFOA and Its Risk to Public Health

255.    PFAS are chemical compounds containing fluorine and carbon. These substances have been used for decades in the manufacture of, among other things, household and commercial products that resist heat, stains, oil, and water. These substances are not naturally occurring and must be manufactured.

256.    PFOA is one of the two most widely studied types of PFAS substances.

257.    PFOA has unique properties that causes it to be: (i) mobile and persistent, meaning that it readily spreads into the environment where it breaks down very slowly; (ii) bioaccumulative and biomagnifying, meaning that it tends to accumulate in organisms and up the food chain; and (iii) toxic, meaning that it poses serious health risks to humans and animals.

258.    PFOA easily dissolves in water, and thus it is mobile and easily spreads in the environment. PFOA also readily contaminates soils and leaches from the soil into groundwater, where it can travel significant distances.

259.    PFOA is characterized by the presence of multiple carbon-fluorine bonds, which are exceptionally strong and stable. As a result, PFOA is thermally, chemically, and biologically stable. It resists degradation due to light, water, and biological processes.

260.    Bioaccumulation occurs when an organism absorbs a substance at a rate faster than the rate at which the substance is lost by metabolism and excretion. Biomagnification occurs when the concentration of a substance in the tissues of organisms increases as the substance travels up the food chain.

261.    PFOA bioaccumulates/biomagnifies in numerous ways. First, it is relatively stable once ingested, so that it bioaccumulates in individual organisms for significant periods of time. Because of this stability, any newly ingested PFOA will be added to any PFOA already present. In humans, PFOA remains in the body for years.

262.    PFOA biomagnifies up the food chain. This occurs, for example, when humans eat fish that have ingested PFOA.

263.    The chemical structure of PFOA makes it resistant to breakdown or environmental degradation. As a result, it is persistent when released into the environment.

264.    Exposure to PFAS is toxic and poses serious health risks to humans and animals.

265.    PFAS are readily absorbed after consumption or inhalation and accumulate primarily in the bloodstream, kidney, and liver.

**B.    Defendants' Manufacture and Sale of AFFF/Component Products**

266.    AFFF is a type of water-based foam that was first developed in the 1970s to extinguish hydrocarbon fuel-based fires.

267.    AFFF is a Class-B firefighting foam. It is mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

268.    AFFF is synthetically formed by combining fluorine-free hydrocarbon foaming agents with fluorosurfactants. When mixed with water, the resulting solution produces an aqueous film that spreads across the surface of hydrocarbon fuel. This film provides fire extinguishment and is the source of the designation aqueous film-forming foam.

269.    Beginning in the 1970s, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing PFOA, or the chemical precursors that degrade into PFOA.

43

270.   AFFF can be made without the fluorosurfactants that contain PFOA and/or its precursor chemicals. Fluorine-free firefighting foams, for instance, do not release PFOA, and/or its precursor chemicals into the environment.

271.   AFFF that contains fluorosurfactants, however, is better at extinguishing hydrocarbon fuel-based fires due to their surface-tension lowering properties, essentially smothering the fire and starving it of oxygen.

272.   The fluorosurfactants used in AFFF products sold by the AFFF Defendants were manufactured by the Fluorosurfactant Defendants through the process of telomerization.

273.   The PFCs the Fluorosurfactant Defendants needed to manufacture those fluorosurfactants contained PFOA, and/or its chemical precursors and were designed, manufactured, marketed, distributed and/or sold by the PFC Defendants.

274.   On information and belief, the PFC and Fluorosurfactant Defendants were aware that the PFCs and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

275.   On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the PFC and/or fluorosurfactants contained in the AFFF products discharged into the environment during fire protection, training, and response activities conducted at WFD, resulting in widespread PFAS contamination.

276.   On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment during fire protection, training, and response activities conducted at WFD, resulting in widespread PFAS contamination.

44

C.     Defendants' Knowledge of the Threats to Public Health and the Environment
        Posed by PFOA

277.     On information and belief, by at least the 1970s the Manufacturer Defendants knew

or should have known that PFOA is mobile and persistent, bioaccumulative and biomagnifying,

and toxic.

278.     On information and belief, the Manufacturer Defendants concealed from the public

and government agencies its knowledge of the threats to public health and the environment posed

by PFOA.

279.     Some or all of the Manufacturer Defendants understood how stable the fluorinated

surfactants used in AFFF are when released into the environment from their first sale to a customer,

yet they failed to warn their customers or provide reasonable instruction on how to manage wastes

generated from their products.

280.     AFFF was first developed in the 1960s as a result of the U.S. Navy's research into

the use of fluorosurfactants in firefighting foam to extinguish fuel-based shipboard fires.

281.     In 1969, the Navy promulgated a military standard or "MilSpec" requiring

contractors to use "fluorocarbon surfactants" in firefighting foam products. Since then, the Navy

has revised this MilSpec multiple times, but at no time did the Navy specify the specific

fluorosurfactants to be used in AFFF. The AFFF MilSpec was a "performance specification,"

meaning that the product manufacturers were given great flexibility with respect to designing a

product that would meet the military's performance requirements.

282.     Firefighting foam can be made without the fluorosurfactants that contain PFOA

and/or its precursor chemicals.

283.     When the Navy first promulgated the AFFF MilSpec, hundreds of different

fluorosurfactants had already been created.

284. The AFFF Defendants designed, manufactured, marketed, distributed, and/or sold AFFF products that used fluorosurfactants containing PFOA, or the chemical precursors that degrade into PFOA.

285. The AFFF Defendants utilized PFAS produced by a process, called fluorotelomerization. These fluorotelomer AFFF formulations were produced beginning in the 1970s. Although they are not made with PFOA, they contain precursors—polyfluorinated compounds that are known to degrade to compounds that include PFOA.

286. On information and belief, the AFFF Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products discharged into the environment during fire protection, training, and response activities conducted at WFD, resulting in widespread PFAS contamination.

287. The AFFF Defendants treated their foam formulations as proprietary information and did not disclose the specific chemical ingredients of their formulations to government agencies or the public.

288. Some or all of the Manufacturer Defendants understood how stable the fluorinated surfactants used in AFFF are when released into the environment from their first sale to a customer, yet they failed to warn their customers or provide reasonable instruction on how to manage wastes generated from their products.

**D.     The Impact of PFOA on the Environment and Human Health Is Revealed**

289. Once the truth about PFOA was revealed, researchers began to study the environmental and health effects associated with them, including a "C8 Science Panel".

290. The C8 panel consisted of three epidemiologists specifically tasked with determining whether there was a probable link between PFOA exposure and human diseases. In 2012, the panel found probable links between PFOA and kidney cancer, testicular cancer,

ulcerative colitis, thyroid disease, pregnancy-induced hypertension (including preeclampsia), and hypercholesterolemia.

291.    In laboratory testing on animals, PFOA has caused the growth of tumors, changed hormone levels, and affected the function of the liver, thyroid, pancreas, and immune system.

292.    The injuries caused by PFAS can arise months or years after exposure.

293.    Even after the C8 Science Panel publicly announced that human exposure to 50 parts per trillion, or more, of PFOA in drinking water for one year or longer had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, the Manufacturer Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFOA in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind.

294.    Furthermore, the Manufacturer Defendants have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate to satisfy the standards of Defendants to prove such adverse effects upon and/or any risk to humans with respect to PFOA in human blood.

295.    At all relevant times, the Manufacturer Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing the public from discovering the existence and extent of any injuries/harm as alleged herein.

47

### E.    The Fire Fighting Foam Coalition

296.    When telomerization emerged as the dominant manufacturing process for fluorosurfactants, multiple companies seized the opportunity to be part of the lucrative AFFF market. But the market opportunity presented uncertainties, as it was unclear whether regulators would view the telomer-based AFFF as a hazard. The key question for regulators was whether the telomer-based AFFF would degrade to PFOA once in the environment.

297.    Defendants Tyco, Chemguard, Buckeye, and others formed a group called the Fire Fighting Foam Coalition ("FFFC") to protect their business opportunity and advocate for the continued use of telomer-based AFFF. The FFFC declared that it would serve as "a single source for accurate, balanced information on environment related questions" and would "ensure that accurate information about telomer-based products, is disseminated in the marketplace."[1] The FFFC made several representations regarding the safety of telomer-based AFFF that were either misleading half-truths or were contrary to Defendants' internal knowledge. .

298.    For example, the FFFC told the EPA in 2001 that telomer-based AFFF "does not contain any PFOA-based product."[2] The issue, however, was whether telomer-based AFFF could degrade into PFOA. One company executive admitted in an internal memo that his company's AFFF "will degrade in the environment" to produce PFOA and the "question is how toxic" and how "bioaccumulative" these degraded products are.[3] But contrary to this internal

---

[1] Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

[2] *Id.* Fact Sheet on AFFF Fire Fighting Agents, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2002-03-FFFC.pdf?_ga=2.136386352.1253861871.1649070681-2123137255.1639662520.

[3] *In Re: Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2:18-mn-02873-RMG:28, Email chain from John Dowling to Anne Regina re: EPA meeting: Comments (Apr. 18, 2001) attached as an exhibit to Plaintiff' Omnibus Opposition to Defendants' Motion for Partial Summary Judgment on the Second and

acknowledgment, the FFFC publicly asserted that "telomer based fire fighting foams are not likely

to be a source of PFOA in the environment."[4]

299.    The EPA appointed a committee known as the Telomer Technical Workgroup to

make recommendations to the agency. The president of the FFFC represented the telomer-based

AFFF industry on the EPA committee. When, in 2003, the Telomer Technical Workgroup reported

its conclusions and recommendations, the FFFC president was the spokesperson.

300.    In what the FFFC president called a "major victory" for the industry, the EPA

accepted the proposal of its Workgroup that "telomer-based fire fighting foams no longer be

considered as part of the PFOA ECA process."[5] The FFFC president remarked that "[w]hen we

started this organization two years ago [in 2001], the fate of telomer based AFFF was being tied

directly to the fate of PFOA and the EPA had just told the military to start searching for alternatives

to AFFF."[6] The telomer-based AFFF Defendants had successfully forestalled government

restrictions on their products, thereby prolonging the use of AFFF at WFD and elsewhere.

301.    The fluorochemicals the Fluorosurfactant Defendants needed to manufacture those

fluorosurfactants contained PFOA, and/or its chemical precursors and were designed,

manufactured, marketed, distributed and/or sold by the Fluorochemical Defendants.

---

Third Prongs of the Government Contractor Immunity Defense, ECF 2409-112.

[4] PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

[5] *Id.* PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

[6] *Id.* PFOA ECA Plenary Meeting, *available at* https://static.ewg.org/reports/2020/pfas-firefighter-timeline/2003-Telomers_Safe_Email.pdf?_ga=2.128105996.1253861871.1649070681-2123137255.1639662520.

302.   On information and belief, the Fluorochemical and Fluorosurfactant Defendants were aware that the fluorochemicals and fluorosurfactants they designed, manufactured, marketed, distributed, and/or sold would be used in the AFFF products designed, manufactured, marketed, distributed, and/or sold by the AFFF Defendants.

303.   On information and belief, the PFC and Fluorosurfactant Defendants designed, manufactured, marketed, distributed, and/or sold the fluorochemicals and/or fluorosurfactants contained in the AFFF products discharged into the environment during fire protection, training, and response activities conducted at WFD, resulting in widespread PFAS contamination.

**F.   Federal, State, and International Government Agencies Call for Monitoring and Cleanup of PFAS Contamination**

304.   On May 2, 2012, the EPA published its Third Unregulated Contaminant Monitoring Rule ("UCMR3"), requiring public water systems nationwide to monitor for thirty contaminants of concern between 2013 and 2015, including PFOA.[7]

305.   In the May 2015 "Madrid Statement on Poly- and Perfluoroalkyl Substances (PFAS's)," scientists and other professionals from a variety of disciplines, concerned about the production and release into the environment of PFOA, called for greater regulation, restrictions, limits on the manufacture and handling of any PFOA containing product, and to develop safe non-fluorinated alternatives to these products to avoid long-term harm to human health and the environment.[8]

---

[7] *Revisions to the Unregulated Contaminant Monitoring Regulation (UCMR 3) for Public Water Systems*, 77 Fed. Reg: 26072 (May 2, 2012).

[8] Blum A, Balan SA, Scheringer M, Trier X, Goldenman G, Cousins IT, Diamond M, Fletcher T, Higgins C, Lindeman AE, Peaslee G, de Voogt P, Wang Z, Weber R. 2015. The Madrid statement on poly- and perfluoroalkyl substances (PFASs). Environ Health Perspect 123:A107–A111; http://dx.doi.org/10.1289/ehp.1509934.

306.    On May 25, 2016, the EPA released a lifetime health advisory level (HAL) for drinking water and health effects support documents for PFOA and another type of long-chain PFAS, perfluorooctane sulfonate ("PFOS").[9] The EPA developed the HAL to assist governmental officials in protecting public health when PFOS and PFOA are present in drinking water. The EPA HAL identified the concentration of PFOS and PFOA in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure at 0.07 ppb or 70 ppt. The HAL was based on peer-reviewed studies of the effects of PFOS and PFOA on laboratory animals (rats and mice) and was also informed by epidemiological studies of human populations exposed to PFOS. These studies indicated that exposure to PFOS and PFOA over the HAL could result in adverse health effects, including:

    a.   Developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations);

    b.   Cancer (testicular and kidney);

    c.   Liver effects (tissue damage);

    d.   Immune effects (e.g., antibody production and immunity);

    e.   Thyroid disease and other effects (e.g., cholesterol changes).

307.    In 2016, the National Toxicology Program of the United States Department of Health and Human Services ("NTP") and the International Agency for Research on Cancer ("IARC") both released extensive analyses of the expanding body of research regarding the adverse effects of fluorochemicals. The NTP concluded that both PFOA and PFOS are "presumed to be an immune hazard to humans" based on a "consistent pattern of findings" of adverse immune

---

[9] See Fed. Register, Vol. 81, No. 101, May 25, 2016, Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate.

effects in human (epidemiology) studies and "high confidence" that PFOA and PFOS exposure was associated with suppression of immune responses in animal (toxicology) studies.[10]

308.   IARC similarly concluded that there is "evidence" of "the carcinogenicity of . . . PFOA" in humans and in experimental animals, meaning that "[a] positive association has been observed between exposure to the agent and cancer for which a causal interpretation is . . . credible."[11]

309.   California has listed PFOA and PFOS in its Proposition 65 list as a chemical known to cause reproductive toxicity under the Safe Drinking Water and Toxic Enforcement Act of 1986.[12]

310.   The United States Senate and House of Representatives passed the National Defense Authorization Act in November 2017, which included $42 million to remediate fluorochemical contamination from military bases, as well as devoting $7 million toward the Investing in Testing Act, which authorizes the Center for Disease Control and Prevention ("CDC") to conduct a study into the long-term health effects of PFOA and PFOS exposure.[13]  The legislation

---

[10] See U.S. Dep't of Health and Human Services, Nat'l Toxicology Program, *NTP Monograph: Immunotoxicity Associated with Exposure to Perfluorooctanoic Acid or Perfluorooctane Sulfonate* (Sept. 2016), at 1, 17, 19, *available at*
https://ntp.niehs.nih.gov/ntp/ohat/pfoa_pfos/pfoa_pfosmonograph_508.pdf

[11] See Int'l Agency for Research on Cancer, IARC Monographs: *Some Chemicals Used as Solvents and in Polymer Manufacture* (Dec. 2016), at 27, 97, *available at*
http://monographs.iarc.fr/ENG/Monographs/vol110/mono110.pdf.

[12] California Office of Environmental Health Hazard Assessment, *Chemicals Listed Effective Nov. 10, 2017 as Known to the State of California to Cause Reproductive Toxicity: Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS)*, Nov. 9, 2017, *available at*
https://oehha.ca.gov/proposition-65/crnr/chemicals-listed-effective-november-10-2017-known-state-california-cause.

[13] National Defense Authorization Act for Fiscal Year 2018, H.R. 2810, 115th Congress (2017), *available at* https://www.congress.gov/115/plaws/publ91/PLAW-115publ91.pdf.

also required that the Department of Defense submit a report on the status of developing a new military specification for AFFF that did not contain PFOS or PFOA.[14]

311.    In June 2018, the Agency for Toxic Substances and Disease Registry ("ATSDR") and EPA released a draft toxicological profile for PFOS and PFOA and recommended the drinking water advisory levels be lowered to 11 ppt for PFOA and 7 ppt for PFOS.[15]

312.    In December 2019, the United States Senate and House of Representatives passed the National Defense Authorization Act for Fiscal Year 2020 ("FY 2020 NDAA"), which introduced new prohibitions on the use of PFAS-containing AFFF for land-based applications.[16] Section 322 of the Act introduced a timeline for the phasing out of AFFF use by the military, including by requiring the Secretary of the Navy to publish a new military specification for a fluorine-free fire-fighting agent for use at all military installations by January 31, 2023. Section 322(b) and (c) then provide that Department of Defense organizations will no longer be authorized to purchase AFFF containing more than 1 part per billion of PFAS after October 1, 2023, and that after October 1, 2024, this prohibition will extend to the use of any PFAS-containing AFFF at any military installation.

313.    On February 20, 2020, the EPA announced a proposed decision to regulate PFOA and PFOS under the Safe Drinking Water Act, which the agency characterized as a "key milestone"

---

[14] *Id.*; *see also* U.S. Department of Defense, *Alternatives to Aqueous Film Forming Foam Report to Congress*, June 2018, *available at* https://www.denix.osd.mil/derp/home/documents/alternatives-to-aqueous-film-forming-foam-report-to-congress/.

[15] ATSDR, *Toxicological Profile for Perfluoroalkyls: Draft for Public Comment* (June 2018), *available at* https://www.atsdr.cdc.gov/toxprofiles/tp200.pdf.

[16] National Defense Authorization Act for Fiscal Year 2020, S. 1790, 116th Congress (2019), *available at* https://www.govinfo.gov/content/pkg/BILLS-116s1790enr/pdf/BILLS-116s1790enr.pdf.

in its efforts to "help communities address per- and polyfluoroalkyl substances (PFAS) nationwide."[17]

314.    On June 15, 2022, the EPA released new drinking water health advisory levels (HALs) for four PFAS, including new interim HALs for PFOS and PFOA that departed significantly from the 2016 EPA HAL they replaced.[18] Specifically, EPA issued HALs of 0.004 ppt for PFOA and 0.02 ppt for PFOS,[19] which collectively accounted for only a small fraction of the combined 70 ppt HAL that preceded them.  Importantly, EPA set these interim HALs at levels below which PFOS and PFOA can be measured using current analytic methods, meaning that the mere detection of PFOS or PFOA in a water provider's system would be sufficient on its own to exceed the new levels.

315.    As support for its decision, EPA explained that the science had evolved since 2016 and that the new interim HALs for PFOS and PFOA were "based on human studies" that "found associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, human development (e.g., decreased birth weight), and cancer."[20] Specifically, EPA had performed updated health effects analyses for PFOS and PFOA to provide support for the drinking water regulations the agency planned to adopt for the two chemicals under the SDWA. Based on these analyses, EPA concluded that "the levels at which negative health

---

[17] Press Release, *EPA Announces Proposed Decision to Regulate PFOA and PFOS in Drinking Water*, Feb. 20, 2020, *available at* https://www.epa.gov/newsreleases/epa-announces-proposed-decision-regulate-pfoa-and-pfos-drinking-water.

[18] *See* Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.

[19] *Id.* Fed. Register, Vol. 87, No. 36848, June 21, 2022, Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances.

[20] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Communities* at 1-2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-communities.pdf..

effects could occur are much lower than previously understood when EPA issued the 2016 health advisories for PFOA and PFOS – including near zero for certain health effects."[21]  For this reason, the agency determined there was a "pressing need to provide updated information on the current best available science to public health officials prior to finalization of the health effects assessment."[22]

316.    Because the referenced health analyses are still undergoing final review by EPA's Science Advisory Board, the agency has stated that the new interim HALs for PFOS and PFOA are subject to change. EPA has indicated, however, that it does not anticipate any changes resulting in revised HALs for PFOS and PFOA that are greater than the 4 ppt minimum reporting level[23] that applies to Public Water Systems.[24]

317.    On September 6, 2022, EPA published a notice of proposed rulemaking seeking public comment on its plan to designate PFOS and PFOA as hazardous substances under CERCLA.[25]  Pursuant to that notice, all comments from the public must be submitted by November 7, 2022.

---

[21] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

[22] EPA Office of Water, EPA Doc. No. 822-R-22-003, *INTERIM Drinking Water Health Advisory: Perfluorooctanoic Acid (PFOA) CASRN 335-67-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfoa-2022.pdf; EPA Office of Water, EPA Doc. No. 822-R-22-004, *INTERIM Drinking Water Health Advisory: CASRN 1763-23-1* at 18 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/interim-pfos-2022.pdf.

[23] As EPA's website explains, the Minimum Reporting Level ("MRL") for Unregulated Contaminant Monitoring Rule (UCMR) 5 is the minimum quantitation level that, with 95 percent confidence, can be achieved by capable analysts at 75 percent or more of the laboratories using a specified analytical method. The MRLs in EPA's chart are based on the UCMR 5 requirement to use EPA Method 533.

[24] EPA, *Drinking Water Health Advisories for PFAS Fact Sheet for Public Water Systems* at 2 (June 2022), *available at* https://www.epa.gov/system/files/documents/2022-06/drinking-water-ha-pfas-factsheet-water-system.pdf.

[25] *See* Designation of Perfluorooctanoic Acid (PFOA) and Perfluorooctanesulfonic Acid (PFOS) as CERCLA Hazardous Substances, 87 Fed. Reg. 54415 (Sep. 6, 2022).

318.    On January 6, 2023, the Defense Logistics Agency within the Department of Defense published a new Military Specification for "Fire Extinguishing Agent, Fluorine-Free Foam (F3) Liquid Concentrate, for Land-Based, Fresh Water Application," MIL-PRF-32725 ("F3 MilSpec") in accordance with § 332(a)(1) of the FY 2020 NDAA.[26] This new specification will govern fire extinguishing foams used by all Department of Defense organizations and will require such foams to test "non-detect" for PFAS. The specification further requires manufacturers to "certify in writing that PFAS has not intentionally been added to the concentrate."

### G.    Contamination of Plaintiff's Water System Caused by the Use of AFFF

319.    Plaintiff is the owner and operator of a water system serving approximately 16,000 residents located in and around the City of Wausau, WI.

320.    Plaintiff's system draws the drinking water it provides to customers from six (6) groundwater wells.

321.    Plaintiff has detected PFAS in its groundwater wells.

322.    On information and belief, the PFAS contamination described above is a direct and proximate result of fire protection, training, and response activities at WFD, resulting in the migration of PFAS into Plaintiff's water supply.

323.    In order to ensure that it can continue to provide clean and safe water to residences, Plaintiff has and will continue to take actions to address the above contamination of its property and its potable water supply caused by the Manufacturer Defendants.

324.    Such actions include but are not limited to additional testing and monitoring for PFAS; planning, designing, purchasing, installing, and maintaining water filtration systems to

---

[26] Available on the Defense Logistics Agency's website,
https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=285047.

56

remove these chemicals; infrastructure modifications; contingency planning; and community outreach.

325.    Due to the persistent and long-term nature of PFAS contamination, Plaintiff is expected to suffer damages and incur the costs associated with these and other ongoing necessary remedial actions for many years to come.

326.    Through this action, Plaintiff seeks compensatory damages for the harm done to its property and the costs associated with investigating, remediating, and monitoring its drinking water supplies contaminated with PFAS due to the use of AFFF at WFD.

**H.     AFFF Containing PFOA Is Fungible and Commingled in the Groundwater**

327.    AFFF containing PFOA, once it has been released to the environment, lacks characteristics that would enable identification of the company that manufactured that particular batch of AFFF or chemical feedstock.

328.    A subsurface plume, even if it comes from a single location, such as a retention pond or fire training area, originates from mixed batches of AFFF and chemical feedstock coming from different manufacturers.

329.    Because precise identification of the specific manufacturer of any given AFFF/Component Product that was a source of the PFAS found at WFD is nearly impossible, given certain exceptions, Plaintiff must pursue all Manufacturer Defendants, jointly and severally.

330.    The Manufacturer Defendants are also jointly and severally liable because they conspired to conceal the true toxic nature of PFOA, to profit from the use of AFFF/Component Products containing PFOA, at Plaintiff's expense, and to attempt to avoid liability.

57

## MARKET SHARE LIABILITY, ALTERNATIVE LIABILITY, CONCERT OF ACTION, AND ENTERPRISE LIABILITY

331.    The Manufacturer Defendants in this action are manufacturers that control a substantial share of the market for AFFF/Component Products containing PFOA, and/or its chemical precursors in the United States and are jointly responsible for the contamination of Plaintiff's property, including the soil, sediment, surface water, and groundwater. Market share liability attaches to all of the Manufacturer Defendants and the liability of each should be assigned according to its percentage of the market for AFFF/Component Products at issue in this Complaint.

332.    Because PFAS is fungible, it is impossible to identify the exact Manufacturer Defendant who manufactured any given AFFF/Component Product containing PFOA, and/or its chemical precursors found free in the air, soil or groundwater, and each of these Manufacturer Defendants participated in a territory-wide and U.S. national market for AFFF/Component Products during the relevant time.

333.    Concert of action liability attaches to all the Manufacturer Defendants, each of which participated in a common plan to commit the torts alleged herein and each of which acted tortuously in pursuance of the common plan to knowingly manufacture and sell inherently dangerous AFFF/Component Products containing PFOA, and/or its chemical precursors.

334.    Enterprise liability attaches to all the named Manufacturer Defendants for casting defective products into the stream of commerce.

## CAUSES OF ACTION

### COUNT I:
### DEFECTIVE DESIGN

335.    Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 334 above, and further alleges the following:

336.    As manufacturers of AFFF/Component Products containing PFOA, and/or its chemical precursors, the Manufacturer Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, and not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

337.    The Manufacturer Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

      a.   PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

      b.   Even at extremely low levels, PFAS render drinking water unfit for consumption;

      c.   PFAS poses significant threats to public health; and

      d.   PFAS create real and potential environmental damage.

338.    The Manufacturer Defendants knew of these risks and failed to use reasonable care in the design of their AFFF/Component Products.

339.    AFFF containing PFOA, and/or its chemical precursors pose a greater danger to the environment and to human health than would be expected by ordinary persons such as Plaintiff and the general public.

340.    At all times, the Manufacturer Defendants were capable of making AFFF/Component Products that did not contain PFOA, and/or its chemical precursors. Thus, reasonable alternative designs existed which were capable of preventing Plaintiff's injuries.

341.    The risks posed by AFFF containing PFOA, and/or its chemical precursors far outweigh the products' utility as a flame-control product.

342.    The likelihood that the Manufacturer Defendants' AFFF/Component Products would be spilled, discharged, disposed of, or released into the environment and contaminate

59

Plaintiff's drinking water supply far outweighed any burden on the Manufacturer Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

343. As a direct and proximate result of the Manufacturer Defendants' unreasonably dangerous design, manufacture, and sale of AFFF/Component Products containing PFOA, and/or its chemical precursors, Plaintiff's property and water system has become contaminated with PFAS.

344. The Manufacturer Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiff's property and water system. The Manufacturer Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's health and safety, and/or property rights.

345. The Insurance Company Defendants provided policies to the Manufacturer Defendants covering Plaintiff's injuries and are therefore subject to suit by Plaintiff under Wis. Stat. § 632.24.

## COUNT II:
## FAILURE TO WARN

346. Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 345 above, and further alleges the following:

347. As manufacturers of AFFF/Component Products containing PFOA, and/or its chemical precursors, the Manufacturer Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might foreseeably harm, including Plaintiff and the public.

348. The Manufacturer Defendants' AFFF/Component Products were unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.  PFAS causes extensive groundwater contamination, even when used in its foreseeable and intended manner;

    b.  Even at extremely low levels, PFAS render drinking water unfit for consumption;

    c.  PFAS poses significant threats to public health; and

    d.  PFAS create real and potential environmental damage.

349.    The Manufacturer Defendants knew of the health and environmental risks associated with their AFFF/Component Products, and failed to provide a warning that would lead an ordinary reasonable user or handler of a product to contemplate the dangers associated with their products or an instruction that would have avoided Plaintiff's injuries.

350.    Despite the Manufacturer Defendants' knowledge of the environmental and human health hazards associated with the use and/or disposal of their AFFF/Component Products in the vicinity of drinking water supplies, including PFAS contamination of public drinking supplies and private wells, the Manufacturer Defendants failed to issue any warnings, instructions, recalls, or advice regarding their AFFF/Component Products to Plaintiff, governmental agencies or the public.

351.    As a direct and proximate result of the Manufacturer Defendants' failure to warn, Plaintiff's property and water system has become contaminated with PFAS.

352.    The Manufacturer Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiff's property and water system. The Manufacturer Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's health and safety, and/or property rights.

353.    The Insurance Company Defendants provided policies to the Manufacturer Defendants covering Plaintiff's injuries and are therefore subject to suit by Plaintiff under Wis. Stat. § 632.24.

**COUNT III:**
**NEGLIGENCE**

354.    Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 353 above, and further alleges the following:

355.    As manufacturers of AFFF/Component Products containing PFOA, and/or its chemical precursors, the Manufacturer Defendants owed a duty to Plaintiff and to all persons whom its products might foreseeably harm and to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFAS-containing AFFF.

356.    The Manufacturer Defendants owed a duty to Plaintiff to act reasonably and not place inherently dangerous AFFF/Component Products into the marketplace when its release into the air, soil, and water was imminent and certain.

357.    The Manufacturer Defendants knew or should have known that PFAS were leaching from AFFF used for fire protection, training, and response activities.

358.    The Manufacturer Defendants knew or should have known that PFAS are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released into the environment.

359.    The Manufacturer Defendants knew or should have known that the manner in which they were designing, manufacturing, marketing, distributing, and selling their AFFF/Component Products would result in contamination of Plaintiff's property and water system with PFAS.

360.    Despite the fact that the Manufacturer Defendants knew or should have known that PFAS are toxic, can contaminate water resources and are carcinogenic, the Manufacturer Defendants negligently:

    a. designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold AFFF/Component Products containing PFOA, and/or its chemical precursors;

    b. issued deficient instructions on how their AFFF/Component Products should be used and disposed of, thereby permitting PFAS to contaminate the groundwater in and around Plaintiff's drinking water supply;

    c. failed to recall and/or warn the users of their AFFF/Component Products of the dangers of groundwater contamination as a result of standard use and disposal of their products;

    d. failed and refused to issue the appropriate warning and/or recalls to the users of their AFFF/Component Products; and

    e. failing to take reasonable, adequate, and sufficient steps or actions to eliminate, correct, or remedy any contamination after it occurred.

361.    The magnitude of the burden on the Manufacturer Defendants to guard against this foreseeable harm to Plaintiff was minimal, as the practical consequences of placing this burden on the Manufacturer Defendants amounted to a burden to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products.

362.    As manufacturers, the Manufacturer Defendants were in the best position to provide adequate instructions, proper labeling, and sufficient warnings about their AFFF/Component Products, and to take steps to eliminate, correct, or remedy any contamination they caused.

63

363.    As a direct and proximate result of the Manufacturer Defendants' negligence, Plaintiff's property and water system have become contaminated with PFAS.

364.    The Manufacturer Defendants knew that it was substantially certain that their acts and omissions described above would contaminate Plaintiff's property and water system.  The Manufacturer Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's health and safety, and/or property rights.

365.    The Insurance Company Defendants provided policies to the Manufacturer Defendants covering Plaintiff's injuries and are therefore subject to suit by Plaintiff under Wis. Stat. § 632.24.

## COUNT IV:
## TRESPASS

366.    Plaintiff adopts, realleges, and incorporates the allegations in paragraphs 1 through 365 above, and further alleges the following:

367.    Plaintiff is the owner, operator, and actual possessor of real property and improvements used for collecting drinking water.

368.    The Manufacturer Defendants designed, manufactured, distributed, marketed, and sold AFFF/Component Products with the actual knowledge and/or substantial certainty that AFFF containing PFOA, and/or its chemical precursors would, through normal use, release PFAS that would migrate into groundwater, causing contamination.

369.    The Manufacturer Defendants negligently, recklessly, and/or intentionally designed, manufactured, distributed, marketed, and sold AFFF/Component Products in a manner that caused PFAS to contaminate Plaintiff's property.

64

370.   As a direct and proximate result of the Manufacturer Defendants' trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation, and monitoring costs.

371.   The Manufacturer Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking.  The Manufacturer Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

372.   The Insurance Company Defendants provided policies to the Manufacturer Defendants covering Plaintiff's injuries and are therefore subject to suit by Plaintiff under Wis. Stat. § 632.24.

## COUNT VII:
## PUNITIVE DAMAGES

373.   Plaintiff adopts, realleges, and incorporates each and every allegation in the paragraphs 1 through 372 above, and further alleges the following:

374.   The Manufacturer Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing damage upon Plaintiff, disregarding their protected rights.

375.   The Manufacturer Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFAS would not be released into the environment and inevitably contaminate Plaintiff's property and water supply.

65

376.    The Manufacturer Defendants have caused great harm to Plaintiff, acting with implied malice and an outrageously conscious disregard for Plaintiff's rights and safety, such that the imposition of punitive damages is warranted.

377.    The Insurance Company Defendants provided policies to the Manufacturer Defendants covering Plaintiff's injuries and are therefore subject to suit by Plaintiff under Wis. Stat. § 632.24.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Manufacturer Defendants, and each of them, jointly and severally, and request the following relief from the Court:

a.  compensatory damages according to proof including, but not limited to:

   i.  costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent to which Plaintiff's property and water system have been contaminated with PFAS;

   ii.  costs and expenses related to past, present, and future treatment and remediation of the PFAS contamination impacting Plaintiff's property and water system; and

   iii.  costs and expenses related to past, present, and future installation and maintenance of filtration systems to assess and evaluate PFAS contamination impacting Plaintiff's property and water system;

b.  a declaration that the Manufacturer Defendants acted with negligence, gross negligence, and/or willful, wanton, and careless disregard for the health, safety of Plaintiff;

c.  an order for an award of attorney fees and costs, as provided by law;

d.  pre-judgment and post-judgment interest as provided by law;

e.  an award of punitive damages in an amount sufficient to deter Defendants' similar wrongful conduct in the future;

f.  an award of consequential damages; and

g.  an order for all such other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, CITY OF WAUSAU, demands a trial by jury of all issues so triable as a matter

of right.

Dated:
      November 30, 2023

Respectfully submitted,

**NAPOLI SHKOLNIK**

By:*/s/ Hunter Shkolnik*
Hunter Shkolnik, Esq.
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
(833) 271-4502
hunter@nsprlaw.com

Andrew Croner, Esq.
*(Pro Hac Vice Motion to Be Filed)*
Patrick Lanciotti, Esq.
*(Pro Hac Vice Motion to Be Filed)*
Nicholas Mindicino, Esq.
*(Pro Hac Vice Motion to Be Filed)*
360 Lexington Avenue, 11th Fl.
New York, New York 10017
(212) 397-1000
acroner@napolilaw.com
planciotti@napolilaw.com
nmindicino@napolilaw.com

Paul J. Napoli, Esq.
*(Pro Hac Vice Motion to Be Filed)*
Coral M. Odiot-Rivera, Esq.
*(Pro Hac Vice Motion to Be Filed)*
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
(833) 271-4502
pnapoli@nsprlaw.com
codiot@nsprlaw.com